Attorney, you have to be the perfect lawyer to represent this particular client. Thank you, Your Honor. With your name. Yes, indeed. Thank you. I have to disclose I'm Padi certified, so if that causes anybody problems. Not to me, Your Honor. May it please the Court, thank you for the privilege of argument, David Outwater on behalf of Plaintiff and Appellant, International Padi, Inc. I think both parties' briefing on this particular matter were well done, and I would like to try to really pull out the key pieces of evidence that, for whatever reason, the District Court didn't look at or maybe brushed aside in light of the limited case law that existed at the time we're actually arguing all this. The three particular reasons that the District Court's ruling should be reversed and remanded are one, that there was no subject matter jurisdiction below. The second is that. Aren't you coming a little bit late to the party on that argument? Never, Your Honor. It's actually something that black letter law is clear that the Court can issue a sua sponte request that the litigants determine whether or not there was subject matter jurisdiction. I understand that, but it's a little suspect. And let me explain kind of how that became an issue on the radar screen, subject matter jurisdiction. It was actually in connection with the motion for protective order that DiveLink had filed in the underlying litigation and made a contention, as we point out in the brief, that the amount in controversy is trivial. And at the hearing before Magistrate Nakazato, he kind of looked cross-eyed at us and said, and this is right around the time where we were about to go back to final briefing on the CDA issue, how is there subject matter jurisdiction here? And we kind of looked cross-eyed back. So that's how it became presented. It is completely appropriate to be presented first time on appeal, and it's really a matter that we think disposes of this completely. This was a case filed initially in state court, and I'll go back to subject matter jurisdiction and argue that. But the second reason that this case should be remanded and reversed, the judgment in order, is because we're here on an anti-SLAMP grant. We're not here on a summary judgment where Patty prevailed and I've got to show there's no disputed issues of fact. I'm not here after a trial and there's a sufficiency or waning. I'm here after an anti-SLAMP grant and in favor of diverlink on one sole issue, which is this application of the immunity by the Communication Decency Act, the CDA. And the standard on that is relatively limited. All I need to do, all Patty needs to do, is provide, submit evidence that if credited, if believed by the trier of fact, that that trier of fact could determine, based on the It's not that there's not counter evidence. There is. I'd be remiss to say to the court that Eddie Rhodes didn't distance himself well at his second deposition as to his involvement in this article. But the thing is, during the relevant time period of creation, inception, development, he was all over this thing. He co-developed it. The third reason is this recent repeal, partial repeal of the anti-SLAMP section. I'll get to that if time permitting. Subject matter jurisdiction is about as clear to me as it could be. And if the court will look, and I'm sure it has it, at the first excerpt of record attachment, it's our complaint. Had I tried to file that complaint with four state-based causes of action, no amount of controversy set anywhere, there's not even a dollar figure reference, that court would have thrown me out immediately. And I imagine diverlink might have tried to throw me out too, depending upon the nature of the case. The fact is, Gauss and Sanchez, this panel, this court's rulings, excuse me, make it very clear. The burden is always on the party, diverlink, that's trying to assert jurisdiction. And in the opposition, diverlink really pulls things from the air about the size of Patty. That's about as far as we get. And there's no record evidence of that. There's no record evidence that the size of Patty has any relation to the particular controversy which is at issue, and an analysis of whether subject matter jurisdiction exists. If there's any... You alleged in your complaint that the jurisdiction was adequate, which would have had to have been $25,000, $25,000, and then whatever the injunction would bring. And that's, I disagree with the analysis of how we pigeonhole those numbers into the complaint. That's actually diverlink's argument, which we addressed in the reply. What California code says is that if you have a case that's not identified when you file it in state court, that is limited jurisdiction, it's therefore by definition unlimited. But that does not get the conclusion that it must be $25,000 or more. Actually in California in the code, state court, it can be less than $25,000, but just not of the type of case that the limited jurisdiction court can hear. So that argument that diverlink makes is really fallacious, and it results in a conclusion. Even though the conclusion's wrong, it really supports Patty's argument, which is the code says, California code says, you're looking at the action as a totality when you have an unlimited case in state court. So even if this could have been determined or concluded to be a proper unlimited case and state court had it stayed there, all they've shown is that it's $25,000. The case, the totality of the amount of controversy is $25,000. Not that you take the $25,000 and you multiply it against each cause of action. That'd give us duplicative recovery. That's not what we were seeking. And the case law is clear, too, from the night's hearing. Are you saying that it would be sufficient in state court if the state court were to press that all you had to show was between the first, second, and injunctive claims that the totality of those would add up to $25,000 or more? My argument's a little bit different than that. Really what Diverlink is attempting – I'm asking what the state rule would have been that you were just – I want to make sure I understood what you were saying. What the state rule provides, what the California code provides, is that cases can be of two types, limited or unlimited. If you file a complaint that doesn't indicate whether it's limited or unlimited, then I think you automatically go to unlimited. The other side can claim that you're actually less than $25,000 and then try to get you down to limited. My point was that what – it was really disassembling Diverlink's argument on the matter. They're trying to create a presumption that because this could be deemed unlimited, then the amount in controversy gets stamped on that in state court as $25,000 or more. Well, per claim? No, Your Honor. And that's addressed in our reply brief. It's the action and its totality. It's not per claim. It's not per – That's what I was trying to clarify earlier. Right. It's not per type of damage theory, you know, special, general, punitive. You don't multiply 25 times the number of causes of action or types of damages. And the code as cited in the reply brief is clear. It says the action. I think I even underlined it because it was such a – I was attempting to dissemble what Diverlink was arguing. Well, exactly what did you plead in your complaint? Your Honor, we pled four causes of action. We pled trade libel. We pled defamation. We pled injunctive relief, which arguably is a remedy more than a cause of action. And then we pled state unfair competition. Those are the four state-based claims that we brought. Well, what did you plead in respect to damages? Nothing. Your Honor, we said that it's – I believe the exact words were in excess of the court's jurisdiction – state's court's jurisdiction. Right. You did plead that. Absolutely, Your Honor. I don't debate that at all in an amount to be proved at trial. The fact is that the state jurisdictional numbers, who has general jurisdiction, and the federal court's jurisdictional numbers are not in parallel. I understand that. To conclude on subject matter jurisdiction, the case law is clear. If there's any doubt, if there's any doubt on this jurisdiction issue, it's got to be resolved in favor against jurisdiction and reversed and remanded. And particularly germane is an admission made by Diverlink's counsel, which under the case law, the court may treat as an admission. And that is the admission that counsel, who's here arguing the appeal as well, same counsel, that the amount – quote, unquote – the amount in controversy is trivial. And that is particularly germane because they're faced now with arguing exactly the opposite. And under the case which actually Diverlink cites, Cohen v. Petsmart, which is a Ninth Circuit case, in that case, the plaintiff sent a demand letter for an excess of the court's jurisdiction. And that was used to show that the plaintiff, ha-ha, you thought it was within the court's jurisdiction and therefore the amount in controversy is satisfied. Nothing of the sort happened here, but it's only fair that if defense or defense counsel or the defendant or litigant says to the court below, hey, the amount in controversy is trivial, when arguing a protective order, which is one of the things to address, that that admission should also be used, or at least certainly very probative as to the issue. So then when it goes back to state court, they can use that to establish that all you can prove is trivial? Well, I think that because the admission was made before the federal court, I can't imagine it's going to really be binding at the state court level. The fact is, we'll put on our evidence and it will be what it will be. But the fact is, when you look at the well-plaid complaint of the plaintiff, there is no statement of an amount in controversy at all, and it only states four state-based causes of action for relief. But regardless of what happens at the state court, perhaps in a year or two, if the court agrees with Patty's position, I'm not sure what the state court does, and it's going to depend on the evidence. Speaking of which, for purposes of the CDI, without waiving the jurisdiction issue, I'd be remiss giving the privilege to argue to talk about the CDA, because it really is interesting, and the anti-SLAPP standard, and I'll see if I can get away with it, because I'd like to reserve a little bit of time. The key issue on appeal that has to be focused on is that we're hearing an anti-SLAPP standard, and it's very important to focus on that, because I think that focus got lost in Diverlink's brief. It's not that there's disputed facts. It's not that there's contrary evidence. All Patty had to do to overcome this anti-SLAPP on the CDA was to show evidence, if believed, if believed by the trier fact, that would show that Diverlink could be determined to be non-immune, and a non-immune information content provider, as defined by the CDA. And what the definition of the information content provider is, anyone, any person, any responsible for the creation or development of the material. The evidence in this case that Patty submitted to the district court was overwhelming with regard to the fact that Diverlink was all over this thing at the very beginning, and this is Patty's excerpt of record 189 through 191, which is, if I could laminate anything in this record, that would be it. What that contains is Diverlink's emails in early 2000, and a confirmation of exactly what Diverlink was doing here. Diverlink went, admittedly, to one of its members, somebody that posted something, and grabbed this preliminary comparison, whatever it was. It's not in record evidence. Diverlink destroyed it. We don't know what it is, but that's not what Patty's suing on. Grabbed this preliminary comparison. Affirmatively, Diverlink got it from Welts, is the gentleman who initially prepared it. Put it on its website, and that spawned an idea between the two of them to create that which Patty has sued on, which is this article that they posted and published and distributed and worked on from early 2000 until October 2000. October 2000 being the first version that we ever got, which we actually got in 2001. We pulled out the website, and that's in the excerpt of record. Diverlink's email sent twice, one in March, one in February, to all the certification agencies saying, we're creating, we're preparing, we, we, and he references the members. It's Welts and it's Rhodes, we, together, Rhodes is Diverlink. We're developing this article. We'll send you a copy when it's done so you can look at it. Send us, send me, Diverlink, your certification standards. Send me the data. Send me the data. We are going to prepare this entry-level certification comparison. References a forthcoming study, not what existed, not whenever Welts created a forthcoming next new study. Welts, Welts is not mentioned, not carbon copied, and the evidence that, that Rhodes testified to is that Welts had no involvement in these emails where Diverlink is sending it out to PADI, YMCA, NOW, and the other certification agencies. Anyone looking at those two emails, and it's actually excerpt of record 190, 191, and also I believe 235 and 236 is the March email, they're pretty duplicative. Anyone looking at those sees Diverlink's creating, involved, preparing this material. That's not where the evidence that PADI submitted stopped, but looking at BATSL, for example, this panel's divided ruling in BATSL, looking at Carafano, this case is exactly what those were not. In those cases, it was a third party who essentially used the service as a, as a passive conduit. BATSL was a little different because it was an email sent to Creamers, Creamers then put it on a service, but made some minor edits. That's not what we have here. That's not what the evidence here showed to overcome the anti-SLAT. We have a gentleman, Rhodes, who runs Diverlink, who at every step of the way, from inception to development, until sued, always confirmed that he was instrumentally involved in the creation. The evidence is all laid out in the briefing, but just, I wanted to point out, excerpt of record 189 through 199 that PADI submitted, I just think it's key, and it even identifies the responses that Diverlink got from all the certification agencies sending him, Diverlink, all of the information. But the point I was trying to make is that there is no case under the CDA, let alone on an anti-SLAT standard, that would find that that type of involvement and development and creation would be immune under the CDA. It would write information content provider right out of that code. During development, Diverlink handles almost everything. YMCA contacts him directly. They have emails. We submitted that. It was Tech Clark, YMCA Associate Director, and Eddie Rhodes. Eddie Rhodes testified that he put YMCA directly in touch with Wilt. Completely false. The evidence was that Eddie Rhodes was handling all those communications directly with YMCA about sending standards and working on this article. YMCA even referred internally to it as Diverlink's study. That's how the industry knew it. It was Diverlink's guide. Why did everybody think it was Diverlink's guide? Because Diverlink created a companion study with Wilt, which is in evidence as well, which references the reader back three times to the infringing article that Patty has complained about. Wilt and Rhodes communicated with Patty when Patty complained. Admittedly, Wilt was involved, but the point is that Diverlink was co-authoring, co-developing it. It was Diverlink that suggested an addition of a swimming definition, which we've argued and shown in the brief. It wasn't Wilt. It was Rhodes. He said, we should add a swimming definition to our article, and they did. I misspoke in my brief. I thought they did it after the litigation. I was wrong. It was actually done before the lawsuit. Excerpt of Record 261 is the version of that. It was actually done in late 2001. Before the lawsuit, it was when they were talking with Patty about getting this thing right, which they never did, and they changed it. They added the swimming definition, and it was Rhodes, Diverlink, that did that, that suggested it, that handled it. And then, in all of the versions that we have submitted at Patty's Excerpt of Record 235, 247, 261, and 202, every single version with the material written, admittedly, by Rhodes. The prologue portion, he says, is our study, our article. Never backs off that. And in the first version in October of 2000, he says, this is our next study, then he takes next step for all the subsequent versions, because it was theirs, and it was only not theirs when he got sued. I have three minutes, Your Honors, and if I could try to reserve that, I would like to. Thank you. May it please the Court? This is an anti-SLAP motion that was granted in the trial court to be sure the burden is correct with respect to what the plaintiff's burden was on an anti-SLAP motion once the defendant establishes that the anti-SLAP statute applies. The burden of proof shifts to the plaintiff to prove a, quote, reasonable probability of success on the merits. That's the burden that shifted to the plaintiff. The plaintiff had to show more than just a scintilla of evidence. It's more than just a summary judgment standard, which I believe is what the burden is being tried to be recast in this hearing. To show that the anti-SLAP statute is applicable, what's your initial burden? Our initial burden was to show that it was speech in furtherance of petition or free speech, of public petition or free speech. That burden we met. It's undisputed, both in the trial court and in this court, that Diverlink met that burden. That's not been disputed even at the trial court level. So once we met that burden, once we met our burden showing that the statute was met, applied, the burden shifted to Patty to show that it had a reasonable likelihood of success. Diverlink moved on several grounds. The Communications Decency Act was only one of them, specifically claiming that the Communications Decency Act barred all the claims against Diverlink. To avoid and try to meet its burden, Patty claimed the Communications Decency Act does not apply, trying to raise this notion that Diverlink somehow wrote the article. What Patty or what Diverlink had submitted in advance was testimony from Mr. Rhodes indicating precisely how the article came to be. It was posted on a bulletin board on the website that he owns and operates. When it was posted on the bulletin board, it obtained or received many favorable comments. He contacted the author, who was Walter Wilt, and told Mr. Wilt if he so chose, he would take the article off the bulletin board and put it on his own web page on the website. Bulletin boards have a tendency, as new messages are posted, old messages go further and further down toward the end of the bulletin board and even toward the back of the page, so they become harder to find. So Mr. Rhodes offered to give it its own page because it received so much interest. The author said, yes, he would like to do that. And in February of 2000, the article was given its own page on Diverlink. At that time, Mr. Rhodes did send out emails, and this is where, this is the evidence that the plaintiff uses trying to claim that this was jointly developed, somehow jointly developed. At the time that the article was given its own web page on the website, Mr. Rhodes sent out emails to the different certifying agencies advising them that the article was present on his website, and including to Patty, advising them it was there, telling them how they could review it, inviting them to make comments about it to be sure that it was correct, and inviting them to provide their certification standards to be sure that it was correct. Certification standards, because what this is, is a review of the varying certification standards of, in this case, three different agencies, Patty, the YMCA, and Nowey. Those standards change from year to year, and the author admittedly had certain standards from not necessarily even the same years, and he was having difficulty obtaining the consistent standards from all the different agencies because they didn't want to give them up. So the request was made for that. Mr. Rhodes did make that request. We do not dispute that, but the article was already written. It was already posted on the website at the time that that request was made. That is a post after the article was created, already there. The statements that Patty complains about, and I think an important point to be made here, is that you heard much ado about joint creation of the article and not one word about the specific statements at issue in this case. It is Patty's burden under the anti-SLAP statute to show a likelihood of success with respect to the specific statements that it's complaining about. It must show that Eddie Rhodes is the author of those statements. It may not show that he contributed to some part of the article that is other than those statements or anything, any other part, anything else related to the article. He must address those specific statements, and nowhere, nowhere, either in the trial court or here, has he ever done that. The only evidence that is presented to raise this is some e-mails, and the prologue. Mr. Rhodes did write a preface to the comparison that is on the website, and he uses the word are in the preface. He refers to our comparison. And he testified that he considers our, he uses that in a community sense, but that he did not write the comparison. They also use e-mails, including an e-mail written by Mr. Walter Wilt, who is the author of the statement. One of those e-mails predates this litigation, and it was written to Patty. In it, Mr. Wilt admits, I am the author of the article. That is the evidence that was submitted by Patty, the plaintiff, to refute the anti-SLAPP, evidence where Mr. Wilt says, I am the author of the article. So we have Mr. Rhodes swearing that he did not write the article. We have Patty submitting an e-mail where Mr. Wilt says, I am the author of the article. Patty requested an opportunity to take Mr. Wilt's deposition, which the  So she requested a judgment in this case to give them an opportunity to go take Mr. Wilt's deposition to see whether he would concede that any part of the article was not his. After they were given that opportunity, they reported that they had nothing new to report back to the court. The briefing at that time was already completed. So additional evidence related to that deposition is not in the record, but they did, what is in the record is that they had nothing new to report. What they, what they do have is nothing more than the use of the term are after, after the article was already written. And after the article was already on the website. In order to try to address that, Patty comes up with now two arguments. One, which we're hearing on appeal, is this notion that the trial court was supposed to make an inference because Diverlink allegedly destroyed the computer that all of this related to. Nowhere at any time did they ever ask the trial court to make an inference. That's not in the record. They can't point you to that. They asked for an inference for the first time on appeal. To be sure, there were plenty of discovery disputes below. The trial judge referred all the discovery disputes to the master and ordered Patty to have all of his discovery disputes raised to the master by a certain time. They were. The master reported that all disputes were resolved. There were no outstanding discovery disputes when the trial judge ruled on this motion. The next thing that Patty does to deal with the fact that the use of the term are arises for the first time after the article is already written is it tries to refer to or conjure up a future article. Some of the emails refer to please send in your standards for our future article or our future comparison. And the emails specifically say or the preface says, referring to this future comparison, it says the future comparison is going to compare certification agencies on both sides of the Atlantic. That's specifically what it says. And what Patty tries to say now, well, there was a future article and Mr. Rhodes must have been involved in that. And it's a must have been involved in that because he's using the word are. That's it. That's the evidence they have. If the court reviews this record evidence, PER 225, the use of the word are and the use of the terms future study is in the preface of the article about which that contains all of the statements, all of the statements about which Patty complains. In other words, every single statement that is the subject of this lawsuit was already in the article. It's already there when the use of the term a future study was already being used, was being used. So whatever the future study was going to be, it was not going to include some new statement that was going to be the basis of this lawsuit because those statements are already in the article. They are there. So that argument is simply not supported by the evidence. In short, the evidence does not support Patty's claim at all. With respect to jurisdiction, we believe jurisdiction is shown in this case in two different ways. One, the language used in the complaint shows more than $75,000 is in controversy and two, the evidence submitted to the trial court and to this court shows that the amount in controversy exceeds $75,000. Starting with the complaint, where does that, I don't see a 75 or any figure at all. It does not use numerals specifically, but it does use the language that the specific language that is stated. I'm not in excess of the court's jurisdiction. Yes. And it uses that for each and every claim. It doesn't, it wasn't I who created the idea of saying the general damages are in excess of this general and then it says special and that's 50. Right. How do you get to 75? It says that also for the injunctive relief. It says the injunctive relief is in excess of the limits of the jurisdiction of the court. It says that for the injunctive relief as well. So it doesn't just say that for general, special. It says that for general, special and injunctive relief. Well, that just gets you to 75. Where do you get a cent over there? Restitution is $2,000-plus. And it's in excess. It doesn't get me to just $75,000. I would beg to differ. It says it's in excess of the jurisdictional limits of the court. The jurisdictional limits of the court would be $25,000. It would be in excess of that if only by one penny. Okay. So where does it say that the injunctive relief is in excess of the court's jurisdiction? I don't know if I have the record right here to have that. I do know it alleges that. Let me find it for you here. Well, you incorporate paragraphs 1 through 28, so that may be one way. No, I think they actually allege that. Actually not. I don't think. But maybe I've misread it. Paragraph 12 – I'm sorry. Paragraph 35. P.E.R. 12, paragraph 35 is what I have. And perhaps – Believed to be in excess of the jurisdictional limits of this court. That was the allegation? With respect to the injunctive relief? I believe it's been damaged in an amount. I mean, that's not an allegation of the value of the injunctive relief. It's their allegation that they are saying – Well, if that's true, of course, they get no injunctive relief. So that goes out the window anyway. For their injunction. But their – I mean, if there's damages, then you get no injunctive relief. So, I mean, that doesn't make any sense. But from a defense standpoint, when you receive a complaint and you have, as we did in this case, a few days in which to determine whether it is a removable case or not a removable case, I have three things that say that's in excess of the jurisdiction of the court. And one, general damages. Two, special damages. And the third was injunctive relief. And that's what it said. Now, I don't know whether an analysis ultimately says that that is referring to the value of injunctive relief or that just means maybe they're entitled to no injunctive relief at all. I think a real analysis would indicate that the injunctive relief that they were seeking was a prior restraint. So, yeah, I would have a problem with what they were seeking as far as injunctive relief. But I don't think the issue is whether they were actually entitled to the relief they were seeking. The question is whether it was in controversy or not. Let me ask you this. When there is some question about jurisdiction, then the practice would be for a limited remand to the district court to flesh it out. And you may be quite right that it's way excess of $75,000 or they may be right that it's or you may have been right when you said it was trivial. Why shouldn't the district court make the findings and take us all out of mystery land? Well, you know, that may be the position that any plaintiff who does not object puts an appellate court in. If that's going to be the case, then every single case like this where there's no specific amount alleged in the complaint and it's a raise for the first time in appeal, it's just an automatic go back to the trial court. Yeah, of course, that hardly ever happens because either the district court or somebody else says, oops, wait a minute, this is an ambiguous situation. So you OSC it and get it resolved. It didn't happen here. But my question basically is since we're left at least in some doubt, at least I am, in some doubt about whether the jurisdictional limit is satisfied, why shouldn't we just remand? Well, I would say one issue is I think that the plaintiff misstates the burden. I think the burden is not beyond reasonable doubt. The burden is preponderance of the evidence. Of course. And I do believe he was he was miscasting the no, no, but it's your it's your burden to show that removal of jurisdiction exists. And that, yes, it certainly is. And I believe we've met that by preponderance, but if you're saying there's a doubt with respect to whether the preponderance is met. If there were a doubt, if I had a doubt reading the complaint, there's nothing in the record, so my doubt's got to be resolved by the complaint. And I don't, by using the word doubt, I'm not talking about reasonable doubt or anything. I'm just saying I've got a question about whether the jurisdictional limit is alleged. Is there any reason why a limited remand would not be indicated? I believe that the case law in Sanchez and Goss, I believe the case law in this district is that, and I thought that they were referring to that, both in Sanchez, that the court can refer to summary judgment type evidence to determine the amount in controversy. And perhaps, perhaps your suggestion is that only the trial court can do that, not the appellate court. But I didn't read it that way. So I guess if the idea is that only the trial court can make that determination, then I guess that's what would have to be done. But if an appellate court can review record testimony or summary judgment type testimony, then I think that the appellate court could do it. The allegation in the petition, while it does say in excess of the jurisdictional amount, the jurisdictional limit of the court, that has to refer to a number. That is referring to a dollar amount, when that refers to something. And what the plaintiff would have us do is make believe they didn't say that. Pretend or pretend it doesn't mean what they said, that they didn't really mean when they said their general damages, their special damages, and their injunctive relief exceeded that. That's what they would have us do. We cannot take their complaint and just read out of it the allegations that they actually made. And that is the argument and the position that the plaintiff takes. And that's what this Court has to accept in order to go there. We have to make believe they really didn't say that or they really didn't mean that. Or just, you know, just it's something other than what's really there. Thank you. All right. Thank you. Your outline. On the issue of jurisdiction, it's even more simple than Diverlink's making it out. And the code section I referred to is California Code of Civil Procedure 85A, and it defines amount of controversy. This is the State Court amount of controversy. The amount of the demand or the recovery sought or the value of the property that is in controversy in the action, the totality of the action, counsels against a remand, it sounds like. And I would agree. I think under Sanchez and Gauss, the fact that there is no record evidence on this completely gives this panel the right to put this back where it belongs and where it started, which is at the State Court. There's no evidence in the summary judgment proceedings? I'm sorry, Your Honor? There's no evidence in the summary judgment proceedings? Well, there was no summary judgment proceeding. In the proceedings that followed the filing of the complaint? There is none. And if there was some, I'm sure Diverlink would have tried to use it. The only argument they're making is basically look at Patty's complaint. And I think that's an appropriate argument, look at Patty's complaint. This complaint could not have been filed in federal court originally. It does not satisfy the jurisdictional standard. And also, when you say in the action, and then they have three, you put in three different sets of damages that add up to over $75,000, that to me doesn't make sense to say that you haven't alleged the jurisdictional amount. Well, that's the fallacy of the reasoning, though, Your Honor, is that Diverlink's arguing that the 25 must be pigeonholed into each cause of action. That's not the way it works either. But wait, the causes of action say on their face that this cause of action is in excess of the jurisdiction of the court, this cause of action. Okay, so now you have at least two explicitly saying this cause of action is in excess. This cause of action, it doesn't say all taken together. It just says this cause of action, this cause of action, and then you have the injunction. So I don't know that your reading is any more logical than their reading. Well, if there's any doubt, it's got to go back to state court. But let me try to help providing even more doubt. Where does the 25,000 come from? That's the fallacy. You don't take 25,000 and you put it into each cause of action. Of all the other causes, if you only had one cause of action, you'd have to allege at least 25,000. And that's the, and I know, Your Honor, actually, that's the fallacy. And if you look at CCP 85 and 88 that describes this procedure in state court, the jurisdictional amount, quote, unquote, need not be 25,000 for it to be unlimited. It could just simply be a case that does not fit the type of case that can be heard in limited jurisdiction. That's not what you alleged. You alleged that you had the damages in excess as to the causes, each of the causes of action. I just don't buy your argument. The injunctive relief doesn't come with damages. And I think Your Honor pointed that out. It does. You incorporated paragraphs 1 through 28, plus you alleged that there were damages in excess of the jurisdiction. That may be in the complaint, but it's not quantified. You said they were continuing to accrue. Right. You alleged two sets of damages, and then you said, and until we get, less than until we get an injunction, whatever has happened to us already is going to keep on happening. That's what it says. I would just ask the Court, the reply brief is very clear on this, that this is a case and the action as a whole under the California Code is seeking 25,000 at best, not that you duplicate that for each cause of action and give plaintiff double or triple recovery. That's not what we were seeking. Thank you, Your Honor. Oh, do I have one more minute, or did that just? No. I wanted to touch on the CBO. Thank you. There are no further questions, so thank you for your argument, both of you. And the matter just argued will be submitted. And we'll next your argument. Thank you.
judges: B. Fletcher, Rymer, Fisher